Will the clerk please call the final case in the morning? 116-0005 Anthony Murff v. Workers' Compensation Comm'n. Good morning, Justice of the Court. I am Joseph J. Spingel. I represent Anthony Murff, the appellant in this case. There's two arguments I brought in this case relative to Mr. Murff, who suffered an injury that would not allow him to go back to work as a sanitation laborer, or more commonly known as a garbage man. However, there are other duties associated with a garbage man that are lesser requirements, namely rat abatement, which he was allowed to do for a period of some three years. After three years, we finally went to trial on the case, assuming that that position was permanent for him. As soon as the case was over and we cashed the check about a month later, they tap him on the shoulder and say, You no longer can be on rat abatement. You have to get behind the garbage truck, from which he is restricted. And with that, he lost his employment. I brought the 19-H Petition and 8-8 Petition, which presents two issues for this, has presented two issues along the way, and today presents you with two issues. The first being Section 8-8 of the Workers' Compensation Act. That section is typically known as medical provisions, but also includes a line that a person is entitled to vocational rehabilitation. I asked for vocational rehabilitation and presented a 19-H and a 19-8 Petition seeking authorization or an order for vocational rehabilitation. As I said in my brief, I find no law that says that vocational rehabilitation under 8-8 remains available after an arbitrator's decision. I also said I find nothing that says it is not available after an arbitrator's decision. Is there any way to open up a decision of the Commission after it becomes final other than 19-H? Are you now asking about 19-H? I'm talking about 8-8. Well, wait a minute. Hold on a second. We're going to get to that in a minute. Is there any provision in the Workers' Compensation Act to open up or award additional benefits after a Commission's decision becomes final other than 19-H? There's 8-A medical rights. 8-A medical rights. Okay. And that goes on. If it's tried, it goes on forever. They have to pay it. Which is totally separate from 19-H. But you don't have to reopen, go before the Commissioner. He's entitled to that forever. You only go before the Commissioner if they refuse to pay it. But are you entitled to any benefits other than medical benefits after a Commission's decision becomes final other than through 19-H? I'm here because my argument is we're as much entitled to vocational rehabilitation under 8-A as we are for the surgery. Does it say that? I mean, it occurs to me that if your position is correct, 19-H is meaningless. It's never been presented. I mean, it's meaningless. Because your client testified that his physical condition is not changed from the time the original decision was made until the hearing on the 19-H. That's correct. So he's not entitled to any 19-H benefits because that would be an argument for economic disability, which we've rejected about four times. These are all issues in relation to 19-H. So you lose your 19-H. I'm on the 19-H issue. I can tell. You lose your 19-H, right? I can't lose it. You did lose it.  Okay. So now we're on 8-H. That should be re-examined. Pardon me? The Petrie case? I'm here to give reasons I don't think have been presented why the definition of disability is incorrect or should be re-examined. Petrie says that. Petrie, Kassens, United Airlines, they all say that. They all say that. Well, I want to get into Petrie with you. Petrie is not the only one that says it, Mr. Spengler. Petrie is the only one that says it. United Airlines says nothing that a change in economic circumstance is a proper basis for modification of an award. The evidence is properly excluded. Oh, Mr. Spengler, please. Economic disability, according to Petrie, Kassens, and United Airlines, is no basis for 19-H relief. Okay. You get it for physical or mental, but not for economic. All right. Will you allow me to focus on my 19-H argument then? Focus on whatever you want. Okay. I have to say, in reading Petrie, the more times I've read it, the more times I have problems with it. Now, I have no problem. United Airlines quotes Petrie. That's it. It just quotes it exactly the way it's written in Petrie. The Kassen case, in this court's discussion of disability, which Justice Holdren cited was dictum, but yet it was written, did the same thing. It recited Petrie exactly. Petrie is unique for a couple of reasons. First of all, here's a guy that tried to prove a wage differential before an arbitrator who did not have a job. He went into business. If he had gotten a job and come in with a paycheck, it would have been simple, and that case never would have gotten to the appellate court. But he didn't. He went into business, which allows him to use creative accounting, if he wishes, in order to testify to what his income is, or he can spend where he wants. And my guess is he was denied a wage differential before the arbitrator, because whatever testimony he put out was probably speculative. So the arbitrator gives him an AP2 award. Now he comes in later on 19-H, and apparently he tried to prove a wage differential again, where the court said, no, no, no, no, he didn't appeal the arbitrator's decision. That issue's waived. So here he is. Now he's down to, the only thing I got is I got to prove that my physical condition is worse. And then he somehow gets into his economic condition has worsened. And yet the court said at page four, at the hearing on the 19-H, claimant testified it took three to four times longer to accomplish the same job. Here it is. Sorry. Between the time of arbitration and the filing of the section 19-H petition, claimant's physical condition did not change. And his economic condition improved. Well, if those were the facts and the conclusions in this case in deciding whether or not the 19, I'm sorry, the AP1 was adjudicated, there was absolutely no reason to go into whatever the guy was saying was his economic disability. So that confuses me. The court could adopt that definition of disability entirely by just relying on what they said. No change in physical condition, and actually an improved economic condition. So that puzzles me. So if the period was at for physical disability and those additional words were not there, you would not have a problem? I'm sorry, I'm not sure. If they had not mentioned at all economic disability, you wouldn't have a problem with that? They would never have gotten around to defining disability. They wouldn't have had to. All they would have to say is there's no showing of a greater disability, period, end of discussion, case dismissed. But then they go off into this discussion. And remember that the Petri did get an AP2 award. My client Murph got an AP2 award. If you read AP2 in its totality, it speaks to economic loss. Where did I have that? But do not result in an impairment of earning capacity or have resulted in an impairment of earning capacity. Therefore, I say to you that disability, as AP2 takes into account, includes impairment of earning capacity. And that transcends the definition in Petri. That would mean then, I suppose, that you can come in within 30 months and claim I lost my job so you've got to give me more money, although my physical condition has not changed. I don't quite follow it because we've had a hearing as to what your client is entitled to. He got what he was entitled to before the commission. That was not appealed. He then comes in and says my physical condition has not changed, my mental condition has not changed, but I want to go back now and I want to ask for maintenance under, I guess, 8A is your argument. But I don't understand how you can detect the final decision of a commission other than through 19H. Well, we're now into the 19H portion. Yeah, I understand what you're saying. So we get to retry everything under 19H? Remember, we're not talking about just maybe a change in the salary at some other job. We're talking about loss of a job here. I think that's very significant. I understand that, but it's still economic disability and not physical or mental disability. And so I suppose we've got a retreat from Cassin's, we've got a retreat from United Airlines, and we've got a retreat from Petrie. Again, I don't think United and Cassin are here other than the fact that they begin with the recitation from Petrie, which in my brief I went through all that. But Mr. Spinboa... I said all roads lead back to Petrie. Mr. Spinboa, every time we cite a case, that's exactly what we're doing. There's nothing new about it. I mean, we don't reinvent the wheel every time we get these things. If there's a case that we find to be precedential and we cite it, we're reaffirming it. So we've reaffirmed it every time. I guess you didn't like the first of the building blocks, but we relied on it two times that I can figure out after that. You want us to retreat from all three of them, I guess. I'm asking you to reexamine it. The other thing is, and again, I'm asking you to reconcile it with what I consider a case that is in conflict. And that's a case that was decided two years earlier. And Petrie didn't even mention it. And that was the United States Steel case. Guy has an A.D., I think it was a finger or hand injury. He gets an A.D. decision. Somehow in there, the hand gets worse. He comes in under 19H and he ends up with a permanent total disability award. Well, if the hand got worse, why not? You can't give him that. Why not? Because of the economic loss. But the hand got worse. We can give him all sorts of things if he's got a physical impairment. The argument from the employer was you can only give him an increased A.D. award. And if you follow Petrie, I happen to agree with that argument. And yet the court said, no, we're not limited to A.D. We can take him and give him a permanent total. And I think you can if he has an increase in physical or mental disability. But under Petrie, we turned around and said the definition of disability is contained within. 19H does not include economic disability. It only includes physical or mental. Now, once you have established an increase of physical or mental, then the commission can award anything it wants based on that. And if that means it's increased to a permanent total, well, then heavens, that's what it's increased to. Well, only if you end up with the evidence that you now have medical evidence of permanent total disability. If the evidence is you can't... Mr. Spangola, if you have evidence of an increase of a physical disability, whether you get permanent total based on that or whether you get permanent partial based on that, whatever you get on that obviously is based on medical evidence. But you don't get anything unless you first establish an increase in physical or mental disability. Because we've said that the word disability means physical or mental, not economic. And that's exactly what Petrie says and it's not inconsistent with the prior case. Because the prior case there was a physical increase. That's okay for Petrie because Petrie didn't involve whether or not he was out of a job or could have been. I'll argue with you on the fact that any time you bring in AP1 or AP or AF, you are now taking into account the economic impact. In addition to whatever increased physical disability there may be. And I'm saying that if you define disability to include both, you don't need to have an increase in it. And I would say that this, and this is one, I'm sitting back there and I'm going, you know what, disability is a conjunctive term. I think that's the right term. If I was doing a New York Times crossword puzzle and it said loss of occupation, and the answer happens to be disability, that would be correct. If it said result of heart attack, the word would be, and disability would be a correct answer. There are others. The work compact never speaks of physical disability or economic disability. It only speaks of disability. And there's good reason for that, in my opinion. Some states compensate solely for physical injury and permanent injury for that matter. They do not compensate for economic loss. Some states only compensate if you can show a loss of earnings. I don't know how many states there are like Illinois, but we are one of the few states that compensates for both. And therefore, disability when used in the work compact is as much economic as it is physical. And the Petrie Court never looked at that fact. They overlooked Professor Larson in coming to their conclusion. And they never looked at a dictionary term of which I gave you the definition from every dictionary I could find. I think there's like five of them. And every one of them speaks about loss of occupation. Or, I'm sorry, loss of occupation. I did ask this Court to allow me to mention this Cheland, C-H-L-A-N-D-A case you decided earlier this year, which came out after our briefs. I only want to point out some of the difficulty in this area. I'll tell you what, you're running just right out of time. Just let me read a sentence and I'm done. Okay. Where you wrote the disability, parentheses, i.e., the reduced earning capacity, the complaints, claimant suffered. And then suffered two separate economic disabilities that diminished his value in the labor market, not for physical disabilities per se. Was it in the context of a 19-H? Pardon me? It wasn't in the context of a 19-H? No. No. Well, I mean, you can't... You can't change the decision. All I'm going to point out is... But what did it have to do with? We tap dance around this term disability. And while the Work Comp Act doesn't tap dance around it and say economic over here and physical over there, we are somehow tap dancing around it and saying in some cases we're going to say it's physical, in some cases we're going to say it's economic. I say it's all the same thing. The state of Illinois provides both. When they say disability, they refer to both. I'm asking you to take a look at the statute and consider redefining it in that manner. Thank you, Justice. Thank you, counsel. You'll have time in reply. Counsel, you may respond. Thank you. Good morning, Justices. Mr. Spigolo. May it please the Court, my name is Christopher Jarko. I'm here on behalf of the employer, the City of Chicago. I'm here today to ask that you affirm the decision of the Illinois Workers' Compensation Commission in its entirety. Mr. Murph brings this appeal to you today requesting the extraordinary remedy, extraordinary expansion of rights under sections 19H and 8A of the Act. This claim comes to you today from a final decision of Arbitrator Mason, for which neither party filed a review. That award is now final and adopted by the Commission. The plaintiff is now asking for post-award vocational rehabilitation, maintenance benefits, increased award under 19H, without producing any evidence in support of National T, or evidence showing of an increased disability under Petri or 19H. He's suggesting that Petri was wrongfully decided. What's your response to that? It's not wrongfully decided. I don't, frankly, I don't fully understand the argument. I think the facts in Petri are very similar to the facts in this case. They involved an individual who got an 82 award at arbitration. Later on, he suffered an impact in his economic capacity. The court looked at that, those facts, and specifically found that 19H doesn't take into account economic disability. Well, that's what Petri stands for. Yes. Well, he alluded to some earlier case that he's arguing is contrary to Petri. Yes. So what, are you aware of that case he's talking about? I have U.S. Steel, I believe I addressed it in my brief as well, but the claimant in U.S. Steel petitioned the Commission for an increased award, from an 80 award, scheduled injury, to an 8F odd-law parental disability award under 19H. However, the facts in that case are incredibly different from Petri, as well as this case. That case did involve an increase in physical disability. It did. Which Petri did not. Petri was exclusively the economic disability. There was no increase in physical disability. In the United Airlines case, there was an increase in physical disability. Yes, sir, that was the U.S. Steel case. Or U.S. Steel, pardon me. In that particular case, that case opens up any benefit that the Commission chooses to give that's available under the Act, based upon that increased physical disability. Yes, sir. Petri only talks about economic disability. In this case, we have no increased physical disability. We have only increased economic disability, because he wouldn't give him the job anymore. So in other words, your response is that case is clearly distinguishable from this case. It is. And there's proof in U.S. Steel of increased economic disability. Through the plaintiff's testimony, he said his hand got worse. He went back to the doctor. You mean physical disability. Yes, excuse me. His physical disability. He went back to the doctor. He went back and got physical therapy. And contrary to this case, where the plaintiff, in his own testimony, said that he didn't ever go back to the doctor. His condition remained exactly the same. He's on the same work restrictions. And so clearly, there's no increase in physical disability. This claim is, I have a hard time distinguishing our case today from Petri in any capacity at all. Petri is good law. It's been upheld, as you mentioned earlier today, on a number of occasions, as recently as 2011, I believe. All right, so you want us to follow Petri in his project. Yes. Is that the gist of your argument? Yes. What about his ADA argument? The ADA argument, I would continue to say that the commission was correct in denying vocational rehabilitation under ADA. I'm aware of no prior case law that allows for vocational rehabilitation or maintenance benefits to remain open. And while I understand that, there's also no case law that says that ADA closes, or that maintenance or vocational benefits close after a final award, I think it would certainly go against, frankly, common sense to keep vocational rehabilitation or maintenance benefits open after a final award from the decision, from the commission. And even if it were to stay open, if you look at the facts of this case and the record as a whole, there's no evidence that would support this claimant to undergo vocational rehabilitation. There's no evidence that the vocational rehabilitation will increase the earning capacity in any sense. There's no evidence that the claimant can't go out and get his own job absent vocational rehabilitation. This would be a case that National Team was designed to protect against. Furthermore, he raises an interesting point, though. What's to stop employers from offering jobs to injured employees within their physical restrictions? Keep the job open for the employee throughout the entire workers' comp process, and after the final award comes down from the commission or the arbitrator, if it's not appealed, and then fire him. Nothing stops you from doing it. And he can't go back and get the benefits he would have been entitled to if he hadn't given him the job to begin with. I think that may be an unfortunate circumstance. However, I believe there would be other remedies that the plaintiff may potentially be. What? Well, remedies outside of the Workers' Compensation Act, frankly. Perhaps there would be a labor dispute that the plaintiff could bring up. However, I think it's outside the scope of the Workers' Compensation Act to address those issues. Well, if employers are purposefully frustrating the Workers' Compensation Act by offering jobs only for the purpose of awarding grant benefits under the Act, and as soon as the decision is entered, withdrawing these faux jobs, maybe the Workers' Compensation Act should provide for that so that you can't frustrate the intention of the Act. If no job had been available for this man, there isn't any dispute he would have been entitled to vocational rehabilitation or maintenance in the underlying action. Most likely, correct. Yes. But we don't have any evidence that this was a purposeful job offer. No, I understand. I understand that. I'm trying to get to the question of what happens in the case where there is evidence that it's a sham. Then what do we do? Well, I think you... If we can do anything. Well, I think if you look at this case, the arbitrator actually looked to the impact of these permit restrictions in awarding an augmented AD2 award. In her decision, she even said, this plaintiff's restrictions could affect his ability to find work elsewhere. So that was already considered. It was already litigated. And because of that, she awarded an increased man-as-a-whole award where he would likely have gotten much less had it been without permanent restrictions. So I think it's something that the arbitrators and the commission should take a look at. If their vehicle for compensating the plaintiffs would be through their awards, I think that's a... At this point, that's what the act would allow. That's not the issue before. That's correct. Yes, Judge. So for these reasons and for those stated in my brief, I would ask that you affirm the decision of the Workers' Compensation Commission in its entirety. And thank you for your time today. Thank you, counsel. Counsel may reply. Thank you. Let me just say I'm glad to hear counsel didn't repeat that Petrie is a Supreme Court decision. He said that many times in his briefing. I don't know if it is a mistaken briefing. I don't know who it is, but I just want to mention that. So that Petrie, in and of itself, is not controlling on your right to at least examine, examine or re-examine what I'm asking you to. The other thing is, and I will say in response to whether or not how they handle these jobs, and I'm going to go on tonight to brief, so I'm going to thank you for the Jackson Park Hospital decision earlier this year. I think it satisfies the question of Justice Hoffman you just asked. And if that decision had been made before this case went to trial, this case certainly would have been prepared differently, tried differently, had a different result, and we wouldn't be here today. But for future reference, I thank you all. Thank you, counsel. Thank you, counsel, both for your arguments on this matter. If we take their advisement, written disposition shall issue. Court will stand in recess until 9 a.m. tomorrow morning.